THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ TORRES SÁNCHEZ, Defendant and Appellant.

No. CR-64-57. Decided March 26, 1965.

*Yamil Galib Frangie* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

This case was submitted on the ground that the prosecution evidence—certain lists of *bolita* game—was illegally

obtained. The evidence introduced by The People on the commission of the offense in the presence of police officer Luis A. Pacheco is as follows:

"Q. What was originally the reason for arresting him?

A. Breach of the peace.

Q. What happened?

A. Well, this man was uttering obscene words. He kept telling a young lady not to f . . . him any more . . . that what the hell was wrong with Jimmy, and that's why I intervened with him.

Q. Tell me, was there any insane person around there whom they were trying to appease?

A. That was the reason, a girl 16 or 17 years of age ordered us to stop. Just then some one signalled to us that she was insane. Then we proceeded on our way. She (the insane girl) kept telling us to take Jimmy away, 'Take Jimmy away.' As I reached the corner, I was on my way to see my niece, I heard defendant uttering those phrases." Police officer Luis A. Pacheco Torres, who was testifying, added: that while that minor incident was taking place, the agent was on his way to the house of his niece to get a tray to make some roast pork . . . and the insane girl kept saying to take Jimmy away; that when the agent heard the words inserted at the beginning of this summary, he arrested the defendant because he "believed that he had to make that search because he was disturbing the peace."

The defense evidence offered by Virginia Borrero, defendant's wife, and Rafael Cruz Rodríguez, a neighbor, is as follows:

"A. (Mrs. Borrero) That day, March 3, there was a girl in the barrio who was insane. I was the only one who could appease her, because she would not let anyone appease her in order to take her to the doctor . . . I had to go, they called me to appease her, and she tore off her clothes. That day she went out on the street in a desperate condition—my house is situated in the same yard—I went after her in order to appease her, and then she started to utter obscene words. Many people gathered around there and just then, in the midst of the com-

motion, my husband came down . . . policeman Pacheco arrived at the house of a niece to get some trays . . . a niece of his who lives there. Then he heard the commotion and went to see what was going on. She started to say 'everybody here sells *bolipul.*' My husband was nearest to him and he grabbed him. Right there he got hold of him and searched him, and then he said to him: 'Why do you search me here in the street? You have no right to search me on the street'; that the policeman lifted him and put him in the police patrol; that the girl who was mentally unsound (Ana Mirta Poche) had lived there for more than 10 years; that the witness' husband did not utter obscene words at that place nor disturb the peace of the people who were there; that the insane girl was the one who was shouting."

Rafael Cruz Rodríguez, a neighbor, testified: "a girl named Mirta Poche who is insane lives there. She was making a commotion and uttering obscene words, and there was Virginia Borrero who looked after her so she would not hurt herself, and the woman had to go and he, Arcadio Torres, came down in order to hold her and take care of her. Then, at that moment, in the midst of the commotion—there was a commotion in the yard and we were trying to appease her—the policeman arrived while on his way to the house of a niece to get some trays, and he went up the stairs in order to enter by the rear and go up. The girl then said: 'Everyone who lives here sells *bolipul,*' and since Arcadio was holding and trying to appease her, she pointed at him, but she said 'all those who live here,' and the policeman thrust his hand behind here and took out some papers and a knife and put him by force in the police patrol; that defendant had not uttered nasty words."

We have examined several times the two testimonies given in order to discover how the objects best fit within the trial; and even eliminating the rule of preponderance of the evidence, we honestly believe that the description of the facts respecting the unjustified search presented by the

defense evidence is more logical and more in accord with the daily experience which moves man's social conduct. We notice that the judge did not settle the conflict in the evidence, and at the time of passing upon the motion for return of the evidence by reason of illegal search, he gives full credit to the testimony of Víctor Ramírez, Justice of the Peace of Mayagüez, who, by the way, did not witness anything connected with the violation of the law (breach of the peace by obscene words) which supposedly was the legal ground for defendant's arrest and search.

Defendant was acquitted in the case of the knife seized upon being searched—probably because the blade of the knife was not long enough to make it a prohibited weapon—and he was sentenced to serve one year in jail for a violation of the *Bolita* Act. The offense of playing *bolita*, a sort of popular lottery of a clandestine character—perhaps a grain of salt somewhat objectionable in the historical vice of taking gambles so well liked by our people—is not serious enough to induce us to relax our vigilance in the light of a possible constitutional violation.

The judgment rendered on September 14, 1962, by the Superior Court of Puerto Rico, Mayagüez Part, will be reversed.